We'll hear from Appellant's Counsel in U.S. v. Lovato. Okay. Good morning, Your Honors and Counsel. John Arcisi from the Federal Defender's Office, appearing for Appellant Daniel Lovato. Your Honors, immediacy and spontaneity, these are the principles that historically underlie the present-sense impression exception to the hearsay rules. Let me interrupt just a second. If I understand the facts, your client jumped out of a car right in front of the police car. Is that correct? That's correct. Okay. I just wanted to make sure I understood the... Yeah, he... I don't understand the problem. The telephone 911 call said that somebody jumped out of the car or shot out of the passenger side, I'm sorry, shot out of the passenger side car. And then everything else flows from that. So what does that have to do with immediacy and how immediate does it have to be? Sure. Let me answer both parts of that question. So with respect to the 911 call here, right, that call described, content described an event that had occurred 3, 5, even 10 minutes in the past, this alleged shooting that had occurred. The officer separately, the call said nothing about someone jumping out of the car. The declarant was gone by that point. With respect to how immediate it must be, there's two answers. What difference does it make in this particular case? It makes all the difference, your honor. Why? Because the 911 call was the only substantial, substantive, and direct evidence that contradicted Mr. Lovato's duress defense. And that was, that duress defense was, as the government recognized in its closing, the heart of this case. This case came down to whether or not there was a duress defense that was proven. And that call was all the government had to contradict Mr. Lovato's testimony on that. But what about the fact that it contradicted, too? I'm sorry? The fact sort of contradicted also that not only did he jump out of the car right in front of the police car, but he had the gun in his back, in his belt, and he had the bullets in his pocket. Now, you're driving down the road and you're under duress. They're not going to say, here, put the gun in your pocket and put the bullets in your other pocket and jump out. I don't think that there's nothing physically impossible about that at all. As Officer Braun recognized, these are .22s, right? They're small bullets. You could fit in a handful. There's nothing at all impossible about sticking those in your pocket. And there were some extra bullets found in the passenger's side, which is entirely consistent with his story of putting them quickly in his pocket under duress. With respect to the firearm, you could put it in a number of places. But to secure it, if you're jumping out of a vehicle in duress, that certainly seems… But if you're under duress, why wouldn't you take the gun and throw it out the window as far as away from the drivers could get it if you were really in a duress? Well, Mr. Lovato's testimony was that the passenger's side window didn't work in that vehicle. The vehicle was impounded and destroyed before anyone had a chance to verify that. But that was his testimony with respect to that. Now, with respect to how immediate does it have to be, historically and substantively to the rule, there's two answers to that, right? One is for substantial contemporaneity. And precise contemporaneity is while you're observing it. And substantial contemporaneity is the immediately thereafter. That is that the necessary recognition that the mental process attendant in observing an event and then describing the event takes time. So it's typically, as the commentators note, mere seconds. And I should note that every leading evidentiary treatise notes this point that spontaneity and absolute near immediacy is what's required. And this court's cases, while they're few in number on this exception, do hold that line precisely. In the Rosetta case from 1997, an unpublished case, this court said that a delay of minutes or hours bars resort to the present sense impression. And you're saying, person, tell me what happened. What are you seeing right now? And the person talks for two minutes. And then he's continuing to describe it, describing what they wear, describing everything about it. Maybe he's slow in speech. And it's three minutes. And then the officer says, okay, well, or the 911 operator then says, okay, well, tell me X about what you just saw. So three minutes now have elapsed. Under the rule, is it now not immediately thereafter because there's now three minutes that have elapsed between the time that he or she observed the incident and the time that the person is identifying what he or she had just seen to the 911 operator? The short answer is yes. I think that that does bar resort to this exception. Now, I think it's also important to note that this is an exceedingly narrow exception, right? There are other exceptions that this type of evidence well could come in under in most cases, right? Many of the published cases in this arena deal with the admission of evidence as both the present sense impression as an excited utterance. They also deal with present sense impression or the residual exception to the hearsay clause. So I think that there's a likelihood that in your hypothetical that that 911 call still comes in. It's just it comes in as different parts, right? The first part where he's describing what he sees in that moment, that is a present sense impression. Subsequent statements recounting a prior event minutes past as occurred here are not. Does it depend in part on what he or she had just observed? For example, I'm a 911 caller, and I say on A, I think that a person just walked into the Chase Bank, and I think that guy looked kind of suspicious. I've never seen him in this area, da-da-da-da-da. Example B, I just saw I live in Oklahoma City, and I just saw a bomb go off in a federal building. And so ten minutes have passed. Isn't the importance of the contemporaneousness, isn't it logical that it involves to some degree what he or she had just observed? Ten minutes after I see a bomb go off at a federal building, I'm not likely to forget any of the details. I'm not likely to get it distorted. I might if I'm remembering what a suspicious guy walking into the Chase Bank looked like. You know, it might, and there's a lot of debate in the academic literature about these groundings, about how much we do remember and how much we don't, right? But put that aside. I think in your second hypothetical, you probably are going to get that in as an excited utterance, right, if you see a bomb go off. Okay, let's just say the excited utterance exceptions have been abolished. Then, you know, I don't – the substance of a hearsay statement is always going to be important, right? But I don't think it goes – I don't think it has that much importance with respect to this exception, because we have to go back and step back and think the basis for the guarantees of trustworthiness that allow these statements to transcend the otherwise absolute bar on hearsay is that mental process, that speed of observation to declaration, and that there being no time for reflection, for misrepresentation, for the processes of memory that create false memories or mistakes. And so is it unsatisfying on some level in your hypothetical? Yes, but that rule makes a lot of sense, and it also has the added benefit of being very clear and easy to apply. Well, in this case, didn't the caller specifically tell the 911 operator that he was following a car after shots had been fired from the car and they were coming out of the passenger side window? In the 911 call, yes. That was while he was following this car. No, no, and I want to be clear about that. All the statements that – the call itself, the district court found, as a matter of fact, the call itself was initiated two to three minutes after the shooting happened at all. And then many of the statements that we've challenged, which are identified in the briefing and also in Defendant's Exhibit 39, occur – are historical statements of fact, that occurred in the call three minutes, five minutes, and many even ten minutes after the shooting would have occurred, based on the district court's finding, which is unchallenged by the government. So there is no contemporaneity in the call. That's pretty good. On that point, there is – I'm sorry. Three minutes is not good enough. Three minutes is not good enough for the present sense impression, yeah. And I – on our side, on that proposition, are every leading evidentiary treatise, McCormick, Mueller, Weisenberg, and Winkler-Reed, and I think this court's cases, which if you look at Rosetta and Allen, they're not exactly on point to this case, but they do articulate that historic rule, and Allen does apply it to statements that are precisely contemporaneous. So I think that affirming this decision here would inject a level of confusion and expand that principle beyond its history. What other legal principle would permit this to be admitted? In this case, none. But in other cases, I think excited utterance, the residual hearsay exception. It's going to be a rare 911 call that isn't going to be admissible on some grounds. Now here, the district court found, as a matter of fact, that this was not an excited utterance because there was no excitement. That, again, is also unchallenged. Now, could the government introduce additional evidence, additional foundational evidence, to suggest that there was excitement here? Perhaps. It's hard to see how that would be, but that's an argument that could be had on remand. I think that the other point to make with respect to that is that, I guess, the residual exception is the other one that mainly would come in. But again, sometimes these statements are admitted for proof of the effect on the listener, proof of the effect on the officer, not as substantive evidence. But here, it's important to remember, this was substantive evidence, and again, the only substantive evidence that contradicted the duress defense. The other part of this, too, is that part of the call is indisputably a present-sense impression. We don't dispute that in the scope of this 13-minute long call, the declarant is making remarks that are contemporaneous to what he's observing. We are at the corner of El Paso and— Right. He didn't pull over, stop, and then make the call and then have a 13-minute—he was following right along. He was following for a period of time until the car ran a red light. And frankly, even his observation that the car ran a red light and committed a traffic violation, that's probably a present-sense impression as well. But all of the statements recounting this alleged shooting, which again are inconsistent with some of the statements that this same caller gave to agents three months later in an interview in June, which is recounted in the reply brief, but all the statements describing that event are describing an event that occurred in the past and are done in response to questioning by the operator, which as Professor M. Winklereid notes, that type of opportunity for reflection in response to questions also further undermines the exception. Professor M. Winklereid or McCormick or all of the other authorities really don't talk about the abuse of discretion standard, which you acknowledge in your briefing. So if—assuming arguendo that we don't accept a black-and-white distinction if someone uses a past-tense verb, that that disqualifies a present-sense impression, if there is some gray area between, under the rule, what it constitutes immediately thereafter, if there's some gray area, wouldn't we, in applying the deferential abuse of discretion standard, which I think you acknowledge is particularly deferential in the context of hearsay determinations, aren't we obligated to say if—even if, as a trial judge, we would have said the present-sense impression is not contemporaneous enough, and we agree with Professor M. Winklereid, but in this area of gray area, is two minutes enough? Is three minutes enough? Is four minutes enough? And he's continuing to follow the person. It wasn't something that he had just observed. Wouldn't we be obligated to say it wasn't an abuse of discretion to allow it, even if we would have excluded the evidence were we the trial judge? No, absolutely not. The abuse of discretion standard here is met because our argument is predicated on a mistake of law, right? And a mistake of law is always an abuse of discretion. And that mistake of law here contemplates or allows for really no gray area, right? Mistake of law is applying this—is allowing this in under this factual circumstance. That is where there is a significant delay temporarily between the observation and the marks that are— So any transgression of this rule, even though the cases say that there's an abuse of discretion, really it's just academic because really the abuse of discretion standard is never going to apply when you're applying appellate review over the admission of something under the present sense of pressure exception. If there's a legal error, the abuse of discretion standard is always going to be met, and I'll reserve my time. Mr. Farley? Good morning again, Mr. Arsici. May it please the court, Paul Farley for the government. I'd like to touch briefly, before getting into the particulars of the application of the rule, to talk about the separate statement issue which was raised in the defendant's briefing. Just a little bit of context. On July 30th, the defense raised a confrontation clause, objectioned to the emergency call, and the district court denied that, and that's not an issue here. The next day, when the call was actually offered into evidence, there was a general hearsay objection that was made. Mr. Farley, I hate to do this to you. Yes, sir. Because I think the devil's in the details on what you're getting into. So don't lose your train of thought, please. But on day one, when he says confrontation clause, what you haven't discussed yet is, in the context of discussing the confrontation clause, which, granted, is not at issue today, he does then go about this argument that you have to consider each statement, and there are some statements in there that are testimonial, there are some that are not, that you have to parse each individual statement to appraise the confrontation clause, correct? Yes. What occurred in the confrontation clause, and this is Supplemental Volume 3 at 129 to 133, is the judge engaged in a colloquy with counsel to say, what is it exactly you're objecting to? And finally, after they had a back and forth, said, okay, you want me to keep out his reports of what happened that led him to follow the car, the things that there was a shooting, that the guy in the Honda shot at a white SUV, the passenger was a bald Hispanic guy, he shot out a passenger side window. Fair? Counsel says, yes. And so that's the level of detail in terms of which statements were being objected to. In the end, when he gets overruled on the confrontation clause, he says, I also have a hearsay objection. And Judge Moore doesn't want to hear anything. The judge said, do that tomorrow, you know, or when that comes. I think that's a kind, I think he says, you know, you pick your horse. He said, yes, you took your horse, I've ruled on this one. So he knows when he says objection hearsay, he is already alerted before we get into the second day colloquy, he already knows that the hearsay objection is predicated on exactly the same statements that opposing counsel argues was improperly admitted under the confrontation clause. He knows exactly which statements that defense counsel is arguing are inadmissible hearsay, right? Yes, because they had done that discussion earlier. But when the day comes when it's actually admitted and the general objection is made, arguments are heard and he makes a ruling and then the defense offers this transcript, which we do have on the record here. I want to make it clear, this transcript, and this is in the opening brief at page 15, note 7, they admit was never offered as evidence, was never admitted or shown to the jury. And in fact, it wasn't even proffered to the court until after the court had ruled on the hearsay objection. And the court said, I told you yesterday that if you wanted to make a particularized statement, I would allow you to do so. But, you know, the ship has sailed. And so if there is going to be an argument about – Well, I thought before we get into that colloquy, defense counsel then says, Judge, how do you want us to deal with the hearsay objection? And then they have a whole colloquy where defense counsel reiterates that, yeah, I have a hearsay objection with regard to those statements that we talked about yesterday. Right. So the judge knows even before the government moves for the introduction of the 911 calls, the district court already knows that defense counsel has not said not once but twice in consecutive days of exactly the statements that defense counsel argues are inadmissible hearsay. Right. They've discussed these essentially four types, four statements. But my point is that the defense on appeal here is making a lot of hay about this transcript. This transcript was not the basis of the court's ruling and was not even offered until after the court had ruled. And so if we're going to go through that transcript and say, well, the court didn't consider this particular thing, this particular thing, that was not the basis of the objection to begin with. You say it was offered by the defense? I'm sorry? The transcript was offered by the defense? That's correct. That's correct. To show what he's objecting to, I mean, maybe I'm just totally confused, but the defense argument is the judge said that there's a continuing conversation, and so the whole 911 call is one continuing conversation. Defense counsel argues there's no such continuing conversation exception. Right. And I'm prepared to move to that. I just wanted to underscore that that transcript, we used it as reference, but it was not proffered until after the court had already ruled. So we need to talk about it. Sorry. Okay. Sorry. So the purpose of the substantial contemporaneity requirement is that it minimizes unreliability from defective recollection or conscious fabrication. And we've cited the Dean case from the Eighth Circuit, the Green case from the Third, Blakey from the Seventh. So the question here is whether the declarant's experience remains sufficiently fresh and that he or she hasn't added or subtracted to anything from that experience. I don't think we have any kind of disagreement about the initial call commencing two or three minutes afterwards. It's a question of whether that sufficient contemporaneity could persist through the 13 minutes of the call. There is no per se rule on how long is long enough, and that's because hearsay inquiries are inherently fact intensive and thus necessitate heightened deference to the district court. And the most analogous cases in the briefing all support the district court's ruling here, and I would specifically highlight the Seventh Circuit's decisions in Blakey and in Thomas. In Blakey, you had up to 23 minutes that elapsed before the call was made, and Thomas was very similar in that it was kind of an ongoing narrative of this is what I'm seeing, what I'm experiencing. What distinguishes this case from those relied on by the defense is that here the statements were made in a discrete 13-minute period as events unfolded without any break, interruption, or intervening event. The Manfrey case out of the Eighth Circuit, the statement wasn't made until three or four hours later, and as the court said, it was time to take an intervening walk or a drive. The Green case from the Third Circuit, the witness was searched, driven to a DEA office, and then 50 minutes later was interviewed. In each of these, we're seeing that there was some sort of break in the action, if you want to think of it that way. And again, what we had here was someone witnesses the startling event, the shooting, decides to try and follow the vehicle, immediately calls dispatch or the operator, and starts saying, I just saw this, I just saw this. During this time, and Judge Kelly, you did ask this question, during the entire time, he's trying to maintain visual contact with this vehicle from which shots have been fired. As he's speeding through a residential neighborhood at one point, going on the wrong side of the road, and so trying to follow, not trying to get too close, but not trying to lose him. This is not an opportunity for someone really to reflect and say, well, what is my story on this really going to be? And frankly, I think the jumbled nature of the exchange with the operator underscores that it's a present-sense impression, because we're going from here to here. What about when he says to the operator, they have a gun? And so he says, plural. And then the operator says, which one? Well, isn't the operator then redirecting the caller to ask a specific question, much like he would in an interview? He's not volunteering that either one had a gun. He says, plural, they have a gun. Right? Right, right. But I think it's a problem if he's pulled over by the side of the road and has a chance to kind of collect his thoughts and say, well, here's my story. But he's being reactive. And I think that's what sets this apart from the cases that the defense is relying on, the ones that we have offered, is that there is no, you know, the police haven't arrived. He hasn't pulled over. There's been nothing that has broken that stream. So I think that there's not much danger in affirming this decision that suddenly we're going to have people going, you know, abusing this exception because you need this continuous experience with it. You know, I point out in our brief, we talked about the Mejia case from the Eastern District of New York. And there we had a situation where someone called 911, made a report, called back 16 minutes later. And the court there, relying in part upon Seventh Circuit precedent, said that was sufficiently contemporaneous. It's a question of having the opportunity to be reflective. And does that diminish or destroy the reliability that is the purpose of the requirement? We think not. We've got about four and a half minutes left. I'd like to talk just briefly about harmless error, if I may. I want to ask you a question about deference and then the level of deference we give in our review. So as I understood the defense counsel, he said that what we're dealing with is like a pure legal error here, no deference, no abuse of discretion review. What's your take on that? That seems to assume its own conclusion to me, Your Honor. I mean, the standard is abuse of discretion. And, yes, a legal error amounts to abuse of discretion. But we have to first conclude there's been a legal error in admitting the caller here. And in terms, you know, on the court's decision to do that, it's a heightened deference standard on any hearsay exception under this court's published decision personally because of the fact-intensive nature of the inquiry. And this is a fact-intensive inquiry, just as we've been discussing here about what's going on. I mean, isn't the idea that we're going to let the district court take the first stab at the reliability of a statement? I mean, that's the reason for these exceptions. They're presumed to give some reliability to a hearsay exception or a hearsay statement. Right. I think the district court has to be in that position to do that. So if I could take just a couple of minutes on harmless error just in case. I want to point out that we had three counts that were in play here. We had a gun count. We had an ammunition count as to a canister. And we had the ammunition count as to the pockets, the bullets in the pocket. And so the jury acquitted on the canister count. So we might from that draw some conclusion that they believed at least part of the story about take this and get out. They convicted on the gun count and what I'll call the pocket count. And the court subsequently merged that. So all we need to do is look at whether this call had anything to do, touched in the least, on the bullets in the pocket. Because, as Judge Kelly observed, he tumbled out of the car right in front of the police officer. He had the bullets in his pocket. So there's no question that he had them. It's a question of whether they can meet their burden as defendants for the affirmative defense of being under duress. And there's nothing in that phone call that tells you about putting bullets in the pocket. We acknowledge that the phone call does touch on, I saw the gun, this is the guy, the passenger is the one who fired it. There's nothing there about the bullets in the pocket. Well, he didn't identify the passenger. He just said the shots were out the passenger's side window, didn't he? If I'm recalling correctly, Your Honor, there was a question from the operator about who fired it and he said the passenger. So that's in play, certainly. But there's nothing there about the bullets in the pocket. So you're saying it's harmless on the bullets but not necessarily on the gun? Yeah, but those counts were merged. So, yeah. So all we have to do is sustain the bullets in the pocket count and we're done. And we had the officer said that he could see through the back window of the vehicle. The officer could as he was pursuing. He didn't see any struggle or any kind of activity going on. And he testified that he had difficulty, not in a moving car, but on the ground there with the defendant, had difficulty getting all the bullets out of the pocket because it was so tight. And this directly, I think, contradicted the claim that, well, there was all this excitement and this was shoved at me and I threw them in there and got out of the car. The second thing is the defendant, again, had the burden of showing each element of the defense of duress or justification. And in particular, he had the burden of showing that he didn't recklessly or negligently place himself in a situation where it was probable he'd be forced to engage in the criminal act. That's instruction number 21, which is volume 3, page 537. Now here, by his own testimony, he went down and got into the car on his own to do a drug deal. All right. You meet a drug dealer and get in the car to buy meth and you're at the very least negligent about the possible presence of a firearm. I mean, I can finish my thought or conclude there. Oh, thank you. So there's, again, not a single word in the 911 call that bears on this element, and even the defendant's own testimony doesn't give any other explanation for his decision to get in the car. It was only after he was in the car that the driver told him to close the door and drive off. And again, the emergency call doesn't in the least touch on his decision to get in that car. Thank you very much. I think the appellant has rebuttal time. Let me make two or three quick points. The district court made two legal errors here. Considering the single call as a single statement, not as individualized, admissible, or inadmissible statements, and two, applying an overly expansive view and overly expansive interpretation of the President's impression exception. Those legal errors require reversal under whether it's a discretionary height indifference or regular abuse of discretion standards, and a mistake of law is always an abuse of discretion. What was the second one you mentioned? The court's second mistake was applying the overly expansive view of the President's impression. Thank you. Oh, and I guess we don't have an issue anymore on the question of Colorado statute. With respect to the second issue, we've conceded that this court's case is foreclosed, and the third issue, the government's 28-J letter answers that as well. Thank you. Thank you, Your Honor. All right, this matter will be submitted. Thank you, counsel, for both sides, for your excellent written and oral advocacy.